## LOGISTIC MANAGEMENT SERVICES, INC.

v.

## The UNITED STATES of America, UNI-COR, Federal Prison Industries, Inc. and Krueger International/OEI Division.

### Civ. A. No. 92-3535.

United States District Court,
E.D. Pennsylvania.

July 10, 1992.

Timothy S. Kerr, Starfield & Payne, Fort Washington, Pa., for plaintiff.

Dean Jerrehian, James G. Sheehan, Asst. U.S. Attys., Philadelphia, Pa., for defendants.

## MEMORANDUM

MARVIN KATZ, District Judge.

The parties have stipulated to the following:

1. The identity of the parties is accurately set forth in paragraphs 2 through 4 of the complaint.

2. On August 12, 1991, defendant UNICOR, Federal Prisons Industries, Inc. ("UNICOR") issued Invitation for Bids No. 1PI-0010-91 (the "IFB") requesting bids for the transportation and installation of movable partition panel systems and modular work stations, supplied by UNICOR to various locations throughout the United States and Puerto Rico.

3. The systems furniture and modular work stations are built by prisoners at various federal prisons. UNICOR operates approximately 75 factories at over 48 locations. It products, including the systems furniture at issue here, are sold to federal agencies and the Department of Defense. UNICOR's operations are financed solely through earnings from its products. Through its manufacturing activities, UNICOR provides employment, education and training opportunities to federal prisoners.

4. The prior contract under which this work was performed was held by Mayflower Transit, Inc. ("Mayflower"). Work under that contract was performed by Mayflower, Town and Country, Inc. (an agent

of Mayflower's) and then, for at least the past year, by Logistics Management Services, Inc. ("LMS"), a company having many of the same principals as Town and Country. At the time of the IFB, and at present, work was being carried out by LMS.

5. The prior contract stated:

[w]here the contractor is required to use union labor, or where labor regulations require a class or laborer other than that ordinarily required for furniture installation, a reasonable rate adjustment may be approved in advance by the Contracting Officer's Technical Representative.

6. Under the present contract, union labor was required by UNICOR and/or its customer on at least four occasions. On each of those occasions, UNICOR negotiated a new price with LMS and passed the increase onto its agency customer.

7. Bid opening under the IFB was originally scheduled for September 12, 1991, but was extended to September 19, 1991 by Amendment 0001.

8. In response to the IFB, UNICOR received timely bids from seven bidders, including bids from LMS and Krueger International/OEI Division ("Krueger").

9. Bid opening was conducted on September 19, 1991.

10. After evaluating all the bids, UNICOR determined that all bids were nonresponsive because all bidders had failed to comply with the specifications. For example, for transportation charges, Krueger's bid contained a price per mile varying by length of trip, but LMS' bid contained a price per mile plus a flat fee.

11. Because all bidders on IFB had been deemed to be nonresponsive, on or about October 21, 1991, UNICOR determined to convert the solicitation to a negotiated procurement.

12. On or about January 22, 1992, UNICOR issued Amendment 0001 which converted the IFB to a negotiated procurement identified as Request for Proposals 1PI–0010–91 (the "RFP").

13. The Amendment expressly states as follows:

Solicitation is hereby amended as follows: Subject solicitation is converted from a sealed bid solicitation to a negotiated solicitation. Attached are clause changes/corrections, as well as the schedule to be completed by offerer. Offerors are advised that any deviation from the attached schedule *will not be evaluated.* *BEST AND FINAL OFFERS ARE DUE BY FEBRUARY 3, 1992, 2:00 p.m.*

14. The RFP incorporated the following evaluation scheme:

The evaluation criteria, except for price, are listed in the order of their relative importance. Technical content comprises *75%* of the total points possible (Factors A–C). Price comprises *25%* of the total points possible. (Factor D).

A. *Past Performance/Experience:* How long has the company been in the business of installing Systems and free-standing furniture and what types of systems furniture have they installed. (sic)

B. *Capability:* How many sites can be installed in an average month and does the company have the capability of installing up to forty (40) sites per month.

C. *Response Time:* Does the company have the ability to meet response time required for shipment of product and installation of furniture. Must be able to react within ten (10) working days.

D. *Price:* When scoring this factor, the lowest price will receive the highest score. The next lowest price receives the next highest, and so on.

Total points possible: 100

15. The RFP provided: the "Government contemplates award of a firm fixed price requirements service contract": for a base year and four one year option years.

16. In response to the RFP, six offers were timely submitted to UNICOR. Four of the offers, including offers from LMS and Krueger, contained both technical and price proposals.

17. The RFP expressly provided notification to offerors that the contract might be awarded without discussions.

18. The RFP specifically requested name, titles and telephone numbers of persons authorized to negotiate on behalf of the offeror.

19. Between the time of the issuance of the RFP and the award to Krueger, no discussions were held with any offeror.

20. The technical proposals were evaluated by a technical evaluation panel comprised of UNICOR employees familiar with the underlying requirements of the contract.

21. The technical evaluation panel did not consider price in its evaluation.

22. The technical evaluation panel reviewed the technical aspects in accordance with the evaluation criteria set forth in paragraph 14 above.

23. The RFP required: "Five (5) trailers per site/day spotted."

24. Krueger's technical proposal provided:

[Krueger] can comply with this level of spotted trailers. All spotted trailers shall be transported at least once per week. It is [Krueger's] intention that in complying with this specific transportation requirement that trailers are to be loaded for transport of product to job sites and not for storage.

25. The RFP contained an example to provide pricing for phased installation. The example contained no line item number, but its components were derived from line items elsewhere in the offer.

26. Krueger did not fill in blanks in the example. Krueger did not provide the line item entries necessary to complete the example if necessary.

27. The results of the technical evaluation were as follows:

| Krueger | 72 points |
| Interstate | 42 points |
| Graebel Van Lines | 68 points |
| LMS | 75 points |

28. The UNICOR contracting offer evaluated prices submitted by the offerors. The result of UNICOR's initial evaluation of the prices of the offers is as follows:

| | Base year | Points |
| --- | --- | --- |
| Krueger | $75,573,382 | 25 |
| Interstate | $76,396,350 | 24.73 |
| Graebel Van Lines | $83,988,200 | 22.49 |
| LMS | $93,645,500 | 20.18 |

29. Subsequent to award of the contract, UNICOR reevaluated the prices of the offers. The results of the reevaluation is as follows:

| | Total cost/5 years | Points |
| --- | --- | --- |
| Krueger | $35,088,829 | 25 |
| Interstate | $51,062,975 | 17.18 |
| Graebel Van Lines | $58,474,664 | 15 |
| LMS | $41,123,825 | 21.33 |

30. The overall technical and price scores are as follows:

|  | Original | Reevaluated |
|---|---|---|
| Krueger | 97 | 96.66 |
| Interstate | 71.73 | 64.18 |
| Graebel Van Lines | 90.49 | 83. |
| LMS | 95.18 | 96.33 |

31. On or about May 21, 1992, UNICOR awarded the contract to Krueger. On or about May 21, 1992, UNICOR notified unsuccessful offerors by letter of the award of the contract to Krueger.

32. On or about May 28, 1992, LMS filed a protest with the United States General Accounting Officer ("GAO"), challenging the award to Krueger.

33. On or about June 2, 1992, the Director of the Federal Bureau of Prisons determined that contract performance by Krueger during the pendency of LMS' GAO protest was in the best interest of the United States for a number of reasons including: (1) without the contract, injury would result to the government by causing inmate idleness; (2) the resulting customer dissatisfaction would hamper future business: (3) because delay would have substantial impact on the financial operations of UNICOR; and (4) the award is not prejudicial to government interests, and therefore determined that performance of the contract by Krueger should continue.

34. On or about June 17, 1992, LMS filed this action. Subsequent to filing this action, LMS notified GAO of the pendency of this action, whereupon GAO dismissed LMS' protest.

The parties also stipulate to the authenticity and admission of all documents attached to the Complaint as Exhibits 1 through 5 and all documents produced by Government Defendants in response to Plaintiff's discovery requests identified as Exhibits A through L, the Determination of Responsibility dated March 25, 1992, the Evaluation Score Sheet dated February 13, 1992 and the Technical Evaluation Worksheets attached thereto.

I find as follows:

1. Plaintiff's showing regarding irreparable injury is weak. Loses can probably be compensated by damages, if appropriate, if losses do, in fact, occur.

2. The harm to the United States, Unicor, and Federal Prisons Industries, Inc. would involve unnecessary disruption of the continuity of their operations. The harm to Krueger would involve unduly interrupting its preparation for performance and rendering it inefficient. Unicor would probably suffer a disruption of its correctional program of approximately six months if the preliminary injunction were granted.

3. The public interest is in reducing inmate idleness, since such idleness probably has an adverse effect on the prisons, including security considerations, and in maximizing inmate training. The public also benefits from the fact that Krueger provided a lower price for Unicor.

4. The award was probably in compliance with the applicable statutes and regulations. It is unlikely that the plaintiff will be able to show gross impropriety, bad faith, fraud, conscious wrongdoing, or even that the agency acted illegally or irrationally. There appears to be a rational basis for exercising discretion in canceling the IFB as unresponsive to the solicitation and moving to negotiated procurement, in not having discussions with LMS or the other offerors before the contract was awarded in accordance with the applicable procedures which were followed, in accepting Krueger's proposal, and in applying the stated evaluation criteria in the customary manner.

5. Krueger's price was substantially better than plaintiff's. While I recognize that overall the technical and price scores were close, this fact reinforces that the process was fair, not "rigged," and argues that, in a close case, agency discretion should prevail.

6. It is speculative that Krueger had an unfair competitive advantage and the agency's finding that there was no conflict of interest was probably reasonable. The information to which Krueger was privy probably provided only a basis for speculation about future orders since the bid was submitted six months before performance under the contract was to commence. By the time the contract was awarded, some or all of the information had probably become outdated. The contract period is five years, and the information known to Krueger could not have been relevant to much, if any, of that period. Secondly, the bids were required to be based upon estimates supplied to the bidders by Unicor reflecting historical information, not future plans. This historical information was available to all bidders.

7. Krueger's bid, including the possible escalation of price where union wages must be paid, was probably not a substantial deviation or variation from the RFP. I do not credit the testimony on behalf of plaintiff or the argument that plaintiff's bid would have been materially lower but for the union wage issue. In the past, LMS and Unicor negotiated a separate price for labor on those occasions when union wages had to be paid. It is consistent with Unicor's prior practice and course of dealing to treat situations where union labor is required as being outside the scope of the instant contract and thus subject to negotiation. In any event, the spotted trailer issue and the union labor issue probably have only a marginal or speculative impact on price or cost or performance.

8. Upon balancing all equitable considerations, I cannot find that plaintiff has met its burden of proof for a preliminary injunction. The balance of equities suggests that the agency should be allowed to conduct its business in an orderly way by working with Krueger for a smooth transition. Judicial intervention at this point would disrupt the agency's discretion to conduct its affairs, with little or no benefit to the public.